UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMAZON.COM, INC. et al.,<br>Plaintiffs,<br>v.<br>AMANDEEP SINGH et al.,<br>Defendants. | CASE NO. 2:24-cv-01464-LK<br><br>ORDER ON *EX PARTE* MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION |

This matter comes before the Court on an Ex Parte Motion for Default Judgment and Permanent Injunction against Defendants Amandeep Singh and Bhushan Kumar (together, "Defendants")[1] filed by Plaintiffs Amazon.com, Inc.; Amazon.com Services LLC (together, "Amazon Plaintiffs"); and The Thought & Expression Co. d/b/a Thought Catalog ("Thought Catalog"). Dkt. No. 29. Defendants have not appeared or responded to the motion. Having reviewed the relevant record, the Court denies the motion.

[1] On January 10, 2025, Plaintiffs voluntarily dismissed 10 unidentified Doe Defendants from the lawsuit. *See* Dkt. No. 26.

## I. BACKGROUND

Plaintiff Amazon.com, Inc. is headquartered in Seattle, Washington. Dkt. No. 1 at 4. Plaintiff Amazon.com Services LLC owns and operates the Amazon.com store (the "Amazon Store"). *Id.* at 2. Some products in the Amazon Store are sold directly by Amazon entities, while others are sold by third-party selling partners. *Id.* Plaintiff The Thought & Expression Co., Inc. ("Thought Catalog") is a book publisher that has distributed print books in the United States under the trademark "Thought Catalog" since 2012. *Id.*

Thought Catalog alleges that it "owns common law rights to the mark Thought Catalog for use in connection with print books," as well as a registered trademark for "Thought Catalog," in International Class 41 for an online magazine. *Id.*; *see also* Dkt. No. 1-1 at 2 (copy of registration certificate for "Thought Catalog" (Registration Number 3,857,969) from the United States Patent and Trademark Office). Thought Catalog also alleges that it is the exclusive licensee of copyrights of certain written works registered with the United States Copyright Office. Dkt. No. 1 at 3. As relevant here, Thought Catalog had exclusive licenses to publish in print *The Mountain is You: Transforming Self Sabotage into Self Mastery* by Brianna Wiest (Copyright Number TX 9-260-394) for the period between June 1, 2020, and June 1, 2023; and *A Gentle Reminder* by Bianca Sparacino (Copyright Number TX 9-269-279) for the period from July 22, 2019, until at least September 13, 2024, the date this action was commenced (collectively, the "Thought Catalog Copyrights"). *Id.*; *see also* Dkt. No 1-2 (copies of registration certificates for *The Mountain Is You* and *A Gentle Reminder* from the United States Copyright Office).

### A. Defendants Set Up Various Selling Accounts with the Amazon Store

Between January 2023 and June 2023, Defendants Amandeep Singh and Bhushan Kumar—who both reside in India—established four selling accounts with the Amazon Store. Dkt. No. 1 at 4, 9, 12, 21–23. Singh established Augstin Retail, Borning, and Smarktabs, and Kumar

established Golden Store (collectively, the "Selling Accounts"). *Id.* at 4–5.

To become third-party sellers in the Amazon Store, sellers are required to agree to the Amazon Services Business Solutions Agreement ("BSA"), which governs sellers' access to and use of services from Amazon Services and Amazon.com Services LLC (collectively, the "Amazon Plaintiffs") and sets forth rules for selling in the Amazon Store. *Id.* at 9–10; *see also* Dkt. No. 1-3 (BSA). By entering into the BSA, each seller represents and warrants that it "will comply with all applicable Laws in [the] performance of its obligations and exercise of its rights" under the BSA. Dkt. No. 1 at 10; Dkt. No. 1-3 at 5. Additionally, under the terms of the BSA, sellers agree to provide "accurate and complete" information to Amazon, including the seller's "legal name, address, phone number and e-mail address, as well as any other information [Amazon] may request." Dkt. No. 1 at 11–12; Dkt. No. 1-3 at 3, 5. The BSA states that Amazon "may bring any claims related to your sale of counterfeit products on the Amazon Site in the Governing Courts [i.e., state or federal court in King County, Washington] and seek any remedy available under law related to those claims." Dkt. No. 1-3 at 11, 15.

Although Amazon states that the BSA incorporates the Amazon Plaintiffs' Anti-Counterfeiting Policy, Dkt. No. 1 at 10, it provides no citation to such incorporation, nor has the Court been able to locate a provision in the BSA incorporating the Anti-Counterfeiting Policy.[2] The court "need not accept as true conclusory allegations that are contradicted by documents referred to in the [pleading]." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

---

[2] The Anti-Counterfeiting Policy prohibits the sale of "counterfeit products" and products that "are not legal[.]" Dkt. No. 1 at 10; Dkt. No. 1-4 at 2; *see also* Dkt. No. 1 at 11 (listing as examples of prohibited products those that have been "illegally replicated, reproduced, or manufactured," or those that "infringe another party's intellectual property rights"); Dkt. No. 1-4 at 2 (same). The Policy provides that violations "may result in loss of selling privileges . . . and other legal consequences," including civil penalties in litigation such as "the loss of any amounts received from the sale of inauthentic products, the damage or harm sustained by the rights holders, statutory and other damages, and attorney's fees." Dkt. No. 1 at 10-11; Dkt. No. 1-4 at 2.

Plaintiffs allege that Defendants operated in concert "in their advertising, marketing, offering, distributing, and selling of inauthentic Thought Catalog–branded books," and that they are associated with one another "through common phone numbers and use of similar fabricated invoices displaying the same supplier." Dkt. No. 1 at 13.

**B. Thought Catalog Inspects the Allegedly Infringing Products**

Thought Catalog obtained samples of the allegedly counterfeit products from Defendants' four Selling Accounts through test purchases of Thought Catalog-branded books sold by Defendants' Selling Accounts, and through Amazon's direct provision of samples of suspected counterfeit goods from Defendants' Selling Accounts. Dkt. No. 1 at 12, 21–23.

On or about April 19, 2023, Thought Catalog purchased a copy of *The Mountain Is You* from the Augstin Retail Selling Account. *Id.* at 21. Upon examination of the product, Thought Catalog allegedly confirmed that it infringed the Thought Catalog trademarks and *The Mountain Is You* copyright based on unspecified "deviations from Thought Catalog's authentic books." *Id.* Amazon allegedly confirmed that an invoice provided in connection with this Selling Account "was fabricated" based on unspecified "deviations" from an authentic invoice. *Id.*

On or about April 26, 2024, Amazon provided Thought Catalog with a sample of *The Mountain Is You* that was for sale through the Borning Selling Account. *Id*. Upon examination of the product, Thought Catalog allegedly confirmed that it infringed the Thought Catalog trademarks based on unspecified "deviations from Thought Catalog's authentic books." *Id.* Amazon allegedly confirmed that an invoice provided in connection with this Selling Account "was fabricated" based on unspecified "deviations" from an authentic invoice. *Id.* at 22.

On or about May 26, 2023, Thought Catalog purchased a copy of *A Gentle Reminder* from the Golden Store Selling Account. *Id.* Upon examination of the product, Thought Catalog allegedly confirmed that it infringed the Thought Catalog trademarks and the *A Gentle Reminder* copyright

based on unspecified "deviations from Thought Catalog's authentic books." *Id.* Amazon allegedly confirmed that an invoice provided in connection with this Selling Account "was fabricated" based on unspecified "deviations" from an authentic invoice. *Id.*

On or about April 26, 2024, Amazon provided Thought Catalog with a sample of *101 Essays That Will Change the Way You Think*, by Brianna Wiest, that was for sale through the Smarktabs Selling Account. *Id*. Upon examination of the product, Thought Catalog allegedly confirmed that it infringes the Thought Catalog trademarks based on unspecified "deviations from Thought Catalog's authentic books." *Id.* Amazon allegedly confirmed that an invoice provided in connection with this Selling Account "was fabricated" based on unspecified "deviations" from an authentic invoice. *Id.* at 23.

Through an investigation, Plaintiffs "identified Defendants as the primary recipients of the proceeds of the infringing sales for certain Selling Accounts." *Id.* at 9. Specifically, the investigation revealed that Defendants had "registered certain financial accounts that received proceeds from the Selling Accounts' infringing sales." *Id.*

**C. Procedural History**

On September 13, 2024, Plaintiffs filed the instant complaint against Defendant Singh, Defendant Kumar, and 10 unidentified Doe Defendants for copyright infringement under 17 U.S.C. § 501, trademark infringement under 15 U.S.C. § 1114, false designation of origin under 15 U.S.C. § 1125(a), and violation of the Washington State Consumer Protection Act ("CPA"), Wash. Rev. Code § 19.86.010. Dkt. No. 1. Plaintiffs seek injunctive relief, impoundment and destruction of products in Defendants' control that infringe "Thought Catalog's IP," an "accounting of all amounts due and owing to Plaintiffs as a result of Defendants' unlawful activities," treble damages, interest, attorney's fees and costs, and "an order requiring that identified financial institutions restrain and transfer to Plaintiffs all amounts arising from

Defendants' unlawful infringing activities as set forth in this lawsuit, up to a total amount necessary to satisfy monetary judgment in this case." *Id.* at 18–20.

In October 2024, Plaintiffs filed an *ex parte* motion for alternative service, Dkt. No. 16, which was referred to United States Magistrate Judge Brian A. Tsuchida. Plaintiffs asserted that "because . . . Defendants are located at unknown locations overseas, likely in India," Plaintiffs had been unable to effect service "by conventional means[.]" *Id.* at 1. Plaintiffs asserted that "email service is the most likely means to provide actual notice of this lawsuit," and requested that the Court permit service by registered email. *Id.* at 1, 12. Judge Tsuchida granted the motion the same day. Dkt. No. 19. On October 28, 2024, Plaintiffs' counsel filed an affidavit of service, averring that on October 25, 2024, Defendants Singh and Kumar had been served via email. Dkt. No. 20 at 1–2. Defendant Singh was served process at four separate email addresses; Defendant Kumar was served process at two separate email addresses. *Id.* at 2.

On November 21, 2024, Plaintiffs moved for entry of default against Defendants Singh and Kumar. Dkt. No. 21. On December 2, 2024, however, the Court noted that Plaintiffs' affidavit of service, Dkt. No. 20, did not "include any explicit proof . . . showing that service was actually accomplished," Dkt. No. 22 at 2, and advised that it would not enter default against any party until Plaintiffs provided proof that Defendants had been properly served, *id.* at 2–3. On December 4, 2024, Plaintiffs responded to the order and provided "delivery confirmations . . . show[ing] that the emails were successfully delivered to Defendants' email addresses that the Court authorized for service." Dkt. No. 23 at 2; *see* Dkt. No. 23-2 (email delivery confirmations). That same day, the Clerk of Court entered default against Defendants Singh and Kumar. Dkt. No. 24.

On January 28, 2025, Plaintiffs filed the instant *ex parte* motion for default judgment and permanent injunction. Dkt. No. 29.

## II. DISCUSSION

### A. Legal Standard

Upon an entry of default under Federal Rule of Civil Procedure 55(a), courts have discretion to enter default judgment against the party that has failed to appear or otherwise defend in an action. *See* Fed. R. Civ. P. 55(b)(2); *Hawaii Carpenters' Tr. Funds v. Stone*, 794 F.2d 508, 511–12 (9th Cir. 1986). Default judgments are ordinarily disfavored, and if reasonably possible, cases should be resolved on their merits. *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). When deciding whether to grant a motion for default judgment, courts generally consider the following factors, often referred to as the *Eitel* factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* at 1471–72; *see Waters v. Mitchell*, 600 F. Supp. 3d 1177, 1182 (W.D. Wash. 2022). In this posture, courts must accept as true the factual allegations pleaded in the complaint, except those relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987).

If the Court determines that an entry of judgment is warranted under the *Eitel* factors, the Court must next determine the character and amount of relief to be awarded. *Waters*, 600 F. Supp. 3d at 1182. Plaintiffs seeking an award of damages must provide the court with evidence to establish the amount. *TeleVideo Sys.*, 826 F.2d at 917; *see also Flores v. Flores*, 590 F. Supp. 3d 1373, 1379 (W.D. Wash. 2022). In addition, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

### B. Plaintiffs Are Not Entitled to Default Judgment

In considering the *Eitel* factors, the Court begins and ends with the second and third factors—the substantive merits of the claims and the sufficiency of the complaint. These factors

relate to whether the allegations in the complaint are sufficient to state a claim on which Plaintiffs may recover. *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). Because Plaintiffs have failed to state any claim for relief, default judgment is not warranted.

1. Claim One: Copyright Infringement

Thought Catalog brings a claim for copyright infringement under 17 U.S.C. § 501 against Defendants. Dkt. No. 1 at 14–15. "To establish direct copyright infringement, [a plaintiff] must (1) show ownership of the allegedly infringed material and (2) demonstrate that the alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (citation modified). The "exclusive rights" afforded copyright holders in 17 U.S.C. § 106 include the right "to reproduce the copyrighted work in copies" and "to distribute copies . . . of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending[.]" 17 U.S.C. § 106(1), (3).

Here, Thought Catalog has not established a valid claim for copyright infringement. In its complaint, Thought Catalog advances only conclusory allegations, asserting that Defendants "reproduce[ed], distribut[ed] copies of, publicly display[ed], and/or create[ed] derivative works of the copyrighted materials," Dkt. No. 1 at 14; *see also id.* at 12, 21–22, and that Thought Catalog "determined" from its test purchases and reviews of physical samples of Thought Catalog-branded books sold by Defendants' Selling Accounts "that the books are inauthentic" and that "certain of the books sold by Defendants infringe on one of the Thought Catalog Copyrights[.]" Dkt. No. 1 at 12. It is not enough for Thought Catalog to determine infringement: "A claim has facial plausibility when the plaintiff pleads factual content that allows *the court* to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added). A pleading like Thought Catalog's "that offers 'labels and conclusions' or 'a

formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

While Thought Catalog attempts to bolster its claims in a declaration attached to its motion for default judgment, Dkt. No. 30 at 4, Plaintiffs did not serve the motion or declaration on Defendants, *see* Dkt. No. 29 at 1 (filing motion ex parte), and the *complaint* "is supposed to give a defendant adequate notice of the claims against them, so that the defendant can decide whether it's worth it to defend against those claims." *Dist. Council 16 N. California Health & Welfare Tr. Fund v. Valverde*, 678 F. Supp. 3d 1142, 1144 (N.D. Cal. 2023). Based on the complaint, a defendant may decide that given "the (high) likelihood that he will be found liable, or the (low) amount of damages the plaintiff is seeking, he will not make an appearance, but will instead permit a default judgment to be entered against him." *Id.* (citation omitted). Thought Catalog's complaint makes no effort to explain how Defendants infringed the copyrights at issue. "It is not enough to merely label works 'infringing' or label conduct as 'infringement.'" *YellowCake, Inc. v. DashGo, Inc.*, No. 1:21-CV-0803 AWI BAM, 2022 WL 172934, at *7 (E.D. Cal. Jan. 19, 2022) (dismissing copyright infringement claim where plaintiff "provide[d] no examples of how [defendant] actually infringed the various copyrights" and instead "relie[d] on conclusory allegations of infringement"); *see also Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) ("[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."); *Interscope Recs. v. Rodriguez*, No. 06CV2485-B (NLS), 2007 WL 2408484, at *1 (S.D. Cal. Aug. 17, 2007) (denying motion for default judgment on copyright infringement claim where plaintiff alleged in conclusory fashion that defendant "downloaded, distributed and/or made available for distribution to the public copyrighted works").[3] Because Thought Catalog has failed

[3] Although Thought Catalog alleges that it is the exclusive licensee of the copyrighted works for the relevant time periods, it has not corroborated those allegations by producing the licensing agreements or providing declarations from the copyright owners. *See HyperQuest, Inc. v. N'Site Sols., Inc.*, 632 F.3d 377, 383 (7th Cir. 2011).

to state a claim against Defendants for copyright infringement under 17 U.S.C. § 501, the second and third *Eitel* factors weigh against default judgment on this claim.

2. Claims Two and Three: Trademark Infringement and False Designation of Origin

Thought Catalog also brings a claim for trademark infringement against Defendants under 15 U.S.C. § 1114, and both Amazon and Thought Catalog bring a false designation of origin under 15 U.S.C. § 1125(a) against Defendants. Dkt. No. 1 at 15–16.

Claims for federal trademark infringement under 15 U.S.C. § 1114 and false designation of origin under 15 U.S.C. § 1125 are typically analyzed together because the "analysis under the two provisions is oftentimes identical." *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1047 nn.6 & 8 (9th Cir. 1999). To prevail on a claim for trademark infringement under 15 U.S.C. § 1114, a plaintiff must establish that (1) it owns the trademark at issue; (2) the defendant used in commerce without authorization "any reproduction, counterfeit, copy, or colorable imitation" of the mark "in connection with the sale, offering for sale, distribution, or advertising of any goods or services"; and (3) the defendant's use of the mark is likely to cause confusion, cause mistake, or deceive. 15 U.S.C. 1114(1). Section 43(a)(1) of the Lanham Act, governing false designation of origin, states in pertinent part:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). "Courts analyzing the likelihood of confusion look at eight factors: (1) the strength of the mark; (2) the similarity of the marks; (3) proximity of the goods/services; (4) similarity in the marketing channels used; (5) the type of goods/services and the degree of care

likely to be exercised by purchasers; (6) evidence of actual confusion; (7) defendant's intent in selecting its mark; and (8) likelihood of expansion into other markets." *Lahoti v. Vericheck, Inc.*, 636 F.3d 501, 507 (9th Cir. 2011) (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341–49, 348 (9th Cir. 1979)); *see also JL Beverages Co. LLC v. Jim Beam Brands*, 828 F.3d 1098, 1106 (9th Cir. 2016) (*Sleekcraft* factors apply to false-designation-of-origin claims).

Thought Catalog alleges that it "conducted test purchases and reviewed physical samples" of "Thought Catalog-branded books sold by Defendants' Selling Accounts" and determined that these products were "inauthentic" and "b[ore] an infringing Thought Catalog Trademark" without Thought Catalog's authorization. Dkt. No. 1 at 12.[4] But Plaintiffs make no attempt to explain *how* the use of the mark was infringing, nor is there any non-conclusory allegation in the complaint addressing the likelihood of confusion, mistake, or deception among consumers. *See generally* Dkt. No. 1. Plaintiffs merely assert, without providing "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Iqbal*, 556 U.S. at 678, that "Defendants unlawfully advertised, marketed, offered, distributed, and sold products bearing infringing versions of the Thought Catalog Trademark with the intent and likelihood of causing customer confusion, mistake, and deception as to the products' source, origin, and authenticity," and that "Defendants intended customers to believe, incorrectly, that the products originated from, were affiliated with, and/or were authorized by Thought Catalog and

---

[4] Although a Section 1114 trademark infringement claim requires ownership of a registered trademark, Thought Catalog purports to advance a trademark infringement claim for both of its marks, including its common law mark. Dkt. No. 1 at 15–16 (alleging that Defendants infringed the "Thought Catalog Trademark," which is defined to include both its common law mark "in connection with print books," *id.* at 2, and its registered mark in International Class 41 for an online magazine). The Court disregards the common law mark in its analysis of the trademark infringement claim. However, the Court also notes that "[t]he class to which a product may be assigned" in its trademark registration "does not limit or extend the registrant's rights and has no bearing on likelihood of confusion." *Malarkey-Taylor Associates, Inc. v. Cellular Telecommunications Industry Ass'n*, 929 F. Supp. 473, 476 (D.D.C. 1996); *see also In re Sailerbrau Franz Sailer*, 23 U.S.P.Q.2d 1719 (T.T.A.B. 1992) ("[T]he fact that goods are found in different classes has no bearing on the question of likelihood of confusion. The separation of goods into the various classes of the classification schedule is merely a convenience for the Office and is not intended as a commentary on their relationship to one another in the marketplace.").

likely caused such erroneous customer beliefs." Dkt. No. 1 at 15. And while Amazon alleges in the complaint that *it* was deceived, including through invoices Defendants submitted to Amazon "that purported to show that their infringing books came from a supplier of authentic products," *id.* at 12, 17, Plaintiffs must establish likelihood of confusion, mistake, or deception among the *buying public*, and here, there is no non-conclusory allegation plausibly explaining how the buying public would be confused or deceived. *See Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 812 (9th Cir. 1997) ("Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) prohibits, *inter alia,* the use of any symbol or device which is likely to deceive *consumers* as to the association, sponsorship, or approval of goods or services by another person." (emphasis added)). As with their copyright infringement claim, the first time Plaintiffs offer supporting facts for the alleged trademark infringement and false designation of origin claims are in their motion for default judgment and an attached declaration, Dkt. No. 29 at 17–18, Dkt. No. 30 at 4. But this factual support comes too late; a pleading like the one here "that offers 'labels and conclusions'" amounting to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do[es] not suffice." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Plaintiffs have failed to satisfactorily show a likelihood of success on the merits for the claims of trademark infringement and false designation of origin, and the second and third *Eitel* factors therefore weigh against default judgment on those claims too.

3. Claim Four: Violation of Washington Consumer Protection Act

Plaintiffs also bring a claim against Defendants under the CPA. Dkt. No. 1 at 18. To establish a CPA claim, a plaintiff must show (1) an unfair or deceptive act or practice (2) in trade or commerce (3) impacting the public interest, (4) an injury to her property, and (5) legal causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986). Because Plaintiffs premise their CPA claim on Defendants' alleged infringing activity, but

Plaintiffs have failed to state a claim for any form of infringement, they likewise fail to state a claim under the CPA. Accordingly, the second and third *Eitel* factors weigh against default judgment on that claim as well.

## III. CONCLUSION

Because "[f]ailure to establish the second and third [*Eitel*] factors is dispositive and requires denial of the motion," the Court finds that entry of default judgment is not permitted on any of Plaintiffs' claims. *Amazon.com Inc. v. Tang*, No. 2:23-CV-00898-TMC, 2024 WL 3521528, at *2 (W.D. Wash. July 24, 2024); *see also Arizona Bd. of Regents v. Doe*, 555 F. Supp. 3d 805, 819–20 (D. Ariz. 2021) (because plaintiff's allegations did not establish an entitlement to relief, "it would be pointless to deny the default judgment motion but then allow th[e] claims to linger on the Court's docket"), *aff'd sub nom. Arizona Bd. of Regents for & on behalf of Arizona State Univ. v. Doe*, No. 21-16525, 2022 WL 1514649 (9th Cir. May 13, 2022); *United States ex rel. Lesnik v. Eisenmann SE*, No. C16-1120, 2021 WL 4243399, at *11 (N.D. Cal. Sept. 17, 2021) ("failure to satisfy the second and third *Eitel* factors is sufficient to deny a motion for default judgment").

Accordingly, Plaintiffs' *Ex Parte* Motion for Default Judgment and Permanent Injunction against Defendants, Dkt. No. 29, is DENIED. Plaintiffs may amend their complaint within 21 days. However, they may not seek attorney's fees for their work correcting the above-listed deficiencies. Dkt. No. 9-1 at 6 (the Court "will not award fees incurred correcting mistakes"). If Plaintiffs do not file an amended complaint within 21 days, the Court will enter judgment and close the case.

Dated this 14th day of September, 2026.

Lauren King
United States District Judge